UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH MATTE | CIVIL ACTION |
| VERSUS | NO. 18-7446 |
| MOBIL EXPLORATION AND PRODUCING NORTH AMERICA INC., *et al*. | SECTION: M (2) |

## **ORDER & REASONS**

Before the Court is Plaintiff's motion to remand, R. Doc. 4, to which Defendant United States Steel Corporation ("U.S. Steel") responds in opposition, R. Doc. 13, and in support of which plaintiff Kenneth Matte ("Matte") replies, R. Doc. 18. Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I. BACKGROUND**

This case involves a toxic tort wherein Matte alleges that he developed chronic meylomonocystic leukemia ("CMML") as a result of exposure to benzene and benzene-containing products. Matte alleges that the harmful exposure occurred between 1972 and 1979 when he worked as a seaman aboard the W.M. Keck Sr., a vessel owned and operated by The Superior Oil Company ("Superior"), predecessor-in-interest to defendant Mobil Exploration and Producing North America, Inc. ("Mobil").[1] Matte alleges that he contributed to the mission of the vessel, while it was operating on the navigable inland waters of Louisiana, by aiding in general maintenance.[2] Matte further alleges that he came into contact with benzene and benzene-containing products, such as oil-based drilling fluids, crude oil, penetrators, paint thinners, paints,

---

[1] R. Doc. 1-2 at 1-6.
[2] *Id.* at 3.

1

fuel, and solvents while he performed his work aboard the vessel.[3] Matte specifically alleges that, during his time on the W.M. Keck Sr., he used a product called Black Magic that was manufactured and distributed by defendant Baker Hughes Incorporated ("Baker Hughes"), and a product called Liquid Wrench that was manufactured and/or supplied by defendants Radiator Specialty Company ("Radiator Specialty") and AK Steel Corporation ("National Supply").[4] Matte also alleges that U.S. Steel manufactured and supplied to Radiator Specialty the raffinate used in Liquid Wrench, and that raffinate contains toxic levels of benzene.[5] Matte was diagnosed with CMML in April 2016.[6]

On October 21, 2016, Matte filed this action in the Civil District Court, Parish of Orleans, State of Louisiana against Mobil, Radiator Specialty, U.S. Steel, Baker Hughes, National Supply and Talen's Landing, Inc. ("Talen's"), another alleged supplier of benzene-containing products, such as fuels and lubricants.[7] Matte brings claims against Mobil for negligence under the Jones Act, 46 U.S.C. §§ 30104, *et seq.*, and for unseaworthiness and maintenance and cure under the general maritime law.[8] Matte alleges general maritime law negligence and strict products liability claims against Radiator Specialty, U.S. Steel, Baker Hughes, National Supply, and Talen's.[9] Matte states in his petition that he "disavows any cause of action for acts, omissions, and/or damages that occurred on the Outer Continental Shelf of the United States; thus, removal of this action to the United States district court would be improper."[10]

---

[3] *Id.*
[4] *Id.* at 3-4.
[5] *Id.* at 4.
[6] *Id.* at 5.
[7] *Id.* at 1-4.
[8] *Id.* at 8-9.
[9] *Id.* at 10-16.
[10] *Id.* at 3.

The Civil District Court set a trial date of January 14, 2019, and the parties pursued discovery in the state court action.[11] On August 3, 2017, Matte replied to U.S. Steel's interrogatories and requests for production.[12] Matte's answers to U.S. Steel's interrogatories indicate that he "used Liquid Wrench from the 1960s through 1978 in his work performing maintenance work and in non-occupational use" and that the product was either supplied by his employers or purchased from local hardware stores.[13] As part of his document production, Matte provided his Social Security earnings report to U.S. Steel.[14] The document indicates that from 1966 to 2015, Matte worked for several companies involved in the oil and gas industry, but provides no information regarding that employment other than Matte's earnings.[15]

Matte was deposed on June 28, 2018.[16] The attorneys questioned Matte about his work for the employers listed on his Social Security earnings report, which included Falcon Seaboard, Inc. ("Falcon").[17] Matte confirmed that he worked for Falcon from 1966 to 1970 as a roughneck or floorman.[18] Matte testified that, for three months of his employment with Falcon, he worked on a fixed platform more than three miles from shore and that he used Liquid Wrench during that time.[19]

On July 6, 2018, the court reporter sent the transcript of Matte's deposition to U.S. Steel's attorneys.[20] U.S. Steel removed this action to the United States District Court for the Eastern District of Louisiana on August 6, 2018, invoking federal question subject-matter jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b), and, federal

---

[11] R. Doc. 4-1 at 2.
[12] R. Docs. 4-2 & 4-3.
[13] R. Doc. 4-3 at 2.
[14] R. Doc. 4-2.
[15] *Id.* at 1-6.
[16] R. Doc. 1-3.
[17] *Id.* at 7.
[18] *Id.*
[19] *Id.* at 12.
[20] R. Doc. 1-4 at 1.

question subject-matter jurisdiction under 28 U.S.C. § 1331, because OCSLA is a federal law.[21] U.S. Steel also alleges that this Court has supplemental jurisdiction over Matte's claims against all other defendants pursuant to 28 U.S.C. § 1367(a).[22] U.S. Steel contends that the removal was timely because it was filed within 30 days of U.S. Steel's receiving Matte's deposition transcript, which constitutes "other paper" from which U.S. Steel first ascertained that the case was removable.[23]

## II. PENDING MOTION

On August 9, 2018, Matte filed the instant motion to remand arguing that U.S. Steel's Notice of Removal was untimely filed because U.S. Steel removed the action more than thirty days after it received Matte's deposition transcript, and U.S. Steel should have known earlier that the action was removable based on the petition and Matte's discovery responses.[24] Matte also argues that U.S. Steel improperly removed the action more than one year after it was filed.[25] Further, Matte argues that this action was not removable because he alleged claims under the Jones Act, and that this Court lacks subject-matter jurisdiction because he does not raise any claims under OCSLA.[26] Arguing that U.S. Steel did not have an objectively reasonable basis for seeking removal, Matte requests an award of just costs and actual expenses, including attorney's fees pursuant to 28 U.S.C. § 1447(c).[27]

U.S. Steel opposes Matte's motion to remand arguing that the removal was timely filed, and this Court has federal question subject-matter jurisdiction based on OCSLA.[28] However, U.S.

---

[21] R. Doc. 1 at 1-4.
[22] R. Doc. 1 at 4.
[23] *Id.* at 4-5.
[24] R. Doc. 4-1 at 10-13.
[25] *Id.* at 13.
[26] *Id.* at 3-10.
[27] *Id*. at 14-20.
[28] R. Doc. 13 at 3-9.

4

Steel concedes that Matte's Jones Act claim against Mobil was not removable, and should be severed and remanded to the Civil District Court.[29] U.S. Steel argues that, because it had an objectively reasonable basis for removing the action, an award of attorney's fees and costs is not warranted.[30]

### III. LAW & ANALYSIS

#### a. Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Id.*

#### b. Timeliness of Removal

The time limits for removal are set forth in 28 U.S.C. § 1446(b). Generally, a civil action must be removed within 30 days after the defendant receives a copy of the initial pleading "setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). However, if the case is not removable based on the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the

---

[29] *Id.* at 8-9.
[30] *Id.* at 13-14.

5

case is one which is or has become removable." *Id.* at § 1446(b)(3). "The information supporting removal in a copy of an amended pleading, motion, order or other paper … must be unequivocally clear and certain to start the time limit running." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 608-09 (5th Cir. 2018) (citations and quotations omitted). To that end, the Fifth Circuit has held that "Section 1446(b)(3)'s removal clock begins ticking upon receipt of the deposition transcript" said to constitute the "other paper." *Id.* at 612.

Matte argues that U.S. Steel's removal of this matter was untimely.[31] U.S. Steel filed its Notice of Removal almost two years after Matte instituted this action in state court.[32] However, the action was not removable on the face of the initial pleading, which alleges claims under the Jones Act and general maritime law for damages allegedly resulting from Matte's exposure to benzene and benzene-containing products while he worked as a seaman employed by Superior.[33] There is nothing in the initial pleading to indicate that OCSLA subject-matter jurisdiction could apply to this action.[34] Instead, the petition contains a purported disavowal of OCSLA claims.[35] Thus, the case was not removable unless and until U.S. Steel received "other paper" from which it was first ascertainable "that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

U.S. Steel contends that Matte's deposition transcript constitutes "other paper" within the meaning of § 1446(b)(3), and U.S. Steel's receipt of the transcript on July 6, 2018 triggered the 30-day removal clock under that statute.[36] U.S. Steel removed this matter 31 days later, on August 6, 2018.[37] However, August 5, 2018 was a Sunday. Pursuant to Rule 6(a)(1)(C) of the Federal

---

[31] R. Doc. 4-1 at 10-14.
[32] R. Doc. 1 at 1.
[33] *See* R. Doc. 1-1.
[34] *See id.*
[35] *Id.* at 3.
[36] R. Doc. 1 at 4-5.
[37] *See* R. Doc. 1.

Rules of Civil Procedure, "if the last day of a period is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Thus, U.S. Steel's Notice of Removal was timely filed if Matte's deposition transcript was the "other paper" that started the clock.

Matte contends his discovery responses constitute "other paper," in regard to the factual predicate U.S. Steel invokes for removal, and that U.S. Steel's receipt of those documents on August 3, 2017 triggered the removal clock under § 1446(b)(3), rendering U.S. Steel's removal untimely.[38] Matte's answers to U.S. Steel's interrogatories indicate that he "used Liquid Wrench from the 1960s through 1978 in his work performing maintenance work and in non-occupational use[,]" and that the product was either supplied by his employers or purchased from local hardware stores.[39] This statement gives no indication that Matte used Liquid Wrench on an OCSLA situs. Similarly, although Matte's Social Security earnings report indicates Matte worked for several companies involved in the oil and gas industry, it provides no indication that any of this work was performed on an OCSLA situs.[40] Thus, Matte's discovery responses do not constitute "other paper" within the meaning of § 1446(b)(3) as would render U.S. Steel's removal untimely.

Finally, Matte argues that U.S. Steel improperly removed the action more than one year after it was filed.[41] Pursuant to 28 U.S.C. § 1446(c)(1), "[a] case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." U.S. Steel does not invoke diversity

---

[38] R. Doc. 4-1 at 11-12.
[39] R. Doc. 4-3 at 2.
[40] *Id.* at 1-6.
[41] *Id.* at 13.

7

subject-matter jurisdiction under 28 U.S.C. § 1332. Therefore, 28 U.S.C. § 1446(c)(1) is inapplicable. Accordingly, U.S. Steel's Notice of Removal was timely filed.

### c. OCSLA Federal Subject-Matter Jurisdiction

OCSLA contains an independent grant of original federal jurisdiction, which states, in pertinent part:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with … any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals ….

43 U.S.C. § 1349(b)(1).

The Fifth Circuit interprets this jurisdictional grant as "straightforward and broad." *In re Deepwater Horizon*, 745 F.3d 157, 163-64 (5th Cir. 2014) (citing *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) ("[A] broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA.")). Because OCSLA expressly invests jurisdiction in the federal district courts, "[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (citing *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988)). In evaluating jurisdiction under § 1349(b)(1), federal courts employ a "but-for" test considering whether: (1) the facts underlying the complaint occurred on an outer Continental Shelf ("OCS") situs, which includes a platform permanently or temporarily attached to the seabed of the OCS for the purpose of exploring for, developing or producing resources therefrom; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment on the OCS. *Baker*, 713 F.3d at 213 (citing *Demette v.*

*Falcon Drilling Co.*, 280 F.3d 492, 496 (5th Cir. 2002); *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1998); 43 U.S.C. § 1333(a)(1)).

The first two prongs of the test are satisfied. Matte testified that he worked for three months in the 1960s on a platform fixed to the seabed of the OCS that was drilling for oil.[42] Matte also testified that he used Liquid Wrench during that time.[43] Matte disputes that his injury, his developing CMML, would not have occurred but for that short employment when he used an unidentified amount of Liquid Wrench on an OCSLA situs.[44]

In *Hammond v. Phillips 66 Co.*, 2015 WL 630918, at *1 (S.D. Miss. Feb. 12, 2015), the plaintiff, Wendell Hammond, sued Phillips 66 Company, and several other defendants, in the Circuit Court of Marion County, Mississippi alleging that he developed asbestosis as a result of being exposed to asbestos while working in the oil industry from 1968 to 1979. Chevron Phillips Chemical Company LP ("CPChem"), as successor in interest to Phillips 66, removed the action to the United States District Court for the Southern District of Mississippi, Eastern Division invoking federal subject-matter jurisdiction pursuant to OCSLA, and diversity subject-matter jurisdiction under 28 U.S.C. § 1332. In ruling on Hammond's motion to remand, the court held, with respect to OCSLA jurisdiction, that the third prong of the test, the "but-for connection," was lacking when Hammond's employment was considered as a whole in conjunction with the fact that asbestosis results from the inhalation of asbestos fibers over a long period. 2015 WL 630918, at *3-4. The court noted that Hammond alleged that the majority of his exposure to asbestos occurred when he was employed on land-based rigs; and that, out of the ten years Hammond spent working in the oil industry, only nine months was spent offshore. *Id.* at *3. The court held that CPChem failed to

---

[42] R. Doc. 1-3 at 12.
[43] *Id.*
[44] R. Doc. 4-1 at 4.

9

carry its burden of establishing jurisdiction because it did not offer any evidence "enabling the Court to conclude that Hammond would have developed asbestosis from the nine months he worked offshore regardless of the approximate nine years he worked on land-based oil rigs." *Id.* at *4.

The same reasoning applies in this case. The Department of Health and Human Services has determined that long-term exposure to high levels of benzene in the air can cause leukemia. https://emergency.cdc.gov/agent/benzene/basics/facts.asp. Matte alleges that he developed CMML, a type of leukemia, as a result of being exposed to benzene and benzene-containing products from 1972 and 1979 when he worked as a seaman aboard the W.M. Keck Sr.[45] At his deposition, Matte testified that he was exposed to Liquid Wrench, a benzene-containing product, when he worked on an OCSLA situs for three months in the 1960s. This is an inconsequential amount of time when balanced against the seven years Matte alleges that he was exposed to benzene and benzene-containing products while working as a seaman for Superior. Although Matte's responses to U.S. Steel's interrogatories mention that he used Liquid Wrench from the 1960s through 1978 in his work and in non-occupational use, there is no information provided in the interrogatories to suggest that such use was on an OCSLA situs.[46] U.S. Steel has offered no evidence that would enable this Court to conclude that Matte would not have developed CMML but for the three months he worked on the OCS, regardless of the approximately seven years he worked for Superior and was exposed to benzene and benzene-containing products while working. Therefore, resolving all doubts in favor of remand, the Court finds that U.S. Steel failed to carry its burden of showing that Matte's "injury would not have occurred but for his [offshore]

---

[45] R. Doc. 1-2 at 1-6.
[46] R. Doc. 4-3 at 2.

employment." *Baker*, 713 F.3d at 213. Accordingly, U.S. Steel has not demonstrated that this Court has OCSLA jurisdiction, and Matte's motion to remand is GRANTED.

### d. Attorney's Fees and Costs under 28 U.S.C. § 1447(c).

Although the Court concludes that remand is appropriate, Matte is not entitled to an award of attorney's fees and costs. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). However, "[i]n applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id*. In this case, U.S. Steel was not objectively unreasonable in removing this action based on the potential application of OCSLA jurisdiction. Therefore, Matte's request for fees and costs is DENIED.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Plaintiff's Motion to Remand is GRANTED as to remanding this matter to the Civil District Court, Parish of Orleans, State of Louisiana; and DENIED as to awarding attorney's fees and costs under 28 U.S.C. § 1447(c).

New Orleans, Louisiana, this 16th day of October 2018.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE